Filed 1/31/22  In re M.G. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re M.G. et al., Persons Coming Under the Juvenile Court Law. | B312427 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.H.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP00627A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Dismissed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

C.H. (Mother) and Y.G. (Father) are the parents of two children: M.G. (born in 2018) and J.G. (born in 2020). The juvenile court assumed dependency jurisdiction over the children based on domestic violence between Father and Mother, Father's mental health and substance abuse issues, and Mother's failure to protect the children from these dangers. We consider whether Mother's challenge to the jurisdiction findings the juvenile court made against her is justiciable in light of unchallenged jurisdiction findings against Father. We also consider whether Mother's challenge to a disposition order removing the children from her custody is moot now that the children have been returned to her care.

## I. BACKGROUND

### A.    Investigation

In January 2021, Father called 911 and said he wanted to kill Mother. When law enforcement officers arrived, Father was disoriented and crying and said he needed to be taken away before he hurt Mother. Father was placed on a psychiatric hold under Welfare and Institutions Code[1] section 5150, and the incident was reported to the Los Angeles County Department of Children and Family Services (the Department).

Mother told a Department social worker that, before Father's 911 call, they had been arguing about their relationship and Father "seemed to be triggered" by J.G.'s crying. Father then repeatedly hit himself in the head with canned food before stepping outside to call 911. A couple days earlier, Father told Mother his life was worthless and tried to unsuccessfully hang

---

[1]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

himself with a ribbon. Mother said she did not seek help at that time because she feared potential immigration consequences for Father.

Mother disclosed this was not the first instance of Father mentioning, or acting on, impulses to harm himself. He told Mother he wanted to die on three or four prior occasions. He hit his head against walls in the home on several other occasions. The children were present in the home for all of these events.

Mother also told the social worker that Father has difficulty controlling his anger. According to Mother, Father punched or kicked several holes in the bathroom and closet doors when he was upset. She reported she and Father had "constant" verbal arguments in the two years since M.G. was born, which sometimes escalated to Father pushing Mother and Mother pushing him back. Mother said the children were usually asleep when she and Father argued, but on two or three occasions M.G. placed herself between Mother and Father as they argued and hugged Father's leg.

The children's maternal aunt and maternal grandmother both reported having seen suspicious bruises on Mother. The Department previously investigated the family roughly eight months before Father's 911 call upon receiving a report that Father pushed Mother to the ground and she suffered a cut to her head (Mother was pregnant with J.G. at the time).[2] Mother said she attempted to separate from Father many times—including by leaving the home with the children "once or twice per month"— but she always resumed the relationship because she pitied Father.

---

[2]     The investigation was closed when Father was taken into custody on an immigration matter.

Father told a Department social worker that he drank several times a week and had been using methamphetamine for the past few months. He did not discuss his drug use with Mother, but he believed she "might have suspected that he was using." Father spent about 20 days in jail following an arrest for possession of methamphetamine in December 2020.

Father believed he and Mother had a good relationship before he lost his job at the beginning of the COVID-19 pandemic, but they now argued "daily." He admitted pushing Mother in the last few months. He called 911 in January 2021 "because he did not want to do something he would later regret." He denied trying to harm himself with the ribbon days earlier, stating "it was only a ribbon."

When interviewed not long after his 911 call, Father assured the social worker he would stay away from Mother and the children. About two weeks later, however, Mother arrived home from work to find Father inside her home. Mother felt bad for Father and told him he could stay for a few days while she and the children stayed with a maternal aunt. A social worker previously encouraged Mother to change the locks, seek a restraining order against Father, and call law enforcement if he returned to the home, but Mother did none of these things.

As of February 2021—a few weeks before the jurisdiction hearing—Mother had requested a restraining order protecting her and the children from Father, changed the locks, and enrolled in parenting and domestic violence classes. Around the same time, Mother told a Department social worker she drove to a Los Angeles County Sheriff's Department station and called for help after seeing Father outside her home. The Sheriff's Department,

however, had no record of any call from Mother on the relevant date.

### B.    *Juvenile Court Proceedings*

The Department filed a petition asking the juvenile court to take dependency jurisdiction over the children based on the parents' history of domestic violence, Father's mental health and substance abuse issues, and Mother's failure to protect the children from these dangers.  The juvenile court held a combined jurisdiction and disposition hearing in March 2021, found the dependency petition's allegations to be true, and asserted jurisdiction over both children.  The juvenile court ordered the children removed from Mother and Father's custody and ordered family reunification services for Mother, including individual counseling, domestic violence classes, a program offered by the National Alliance of Mental Illness, and overnight visits with the children.

After Mother filed this appeal from the jurisdiction findings and removal order, the Department requested that we take judicial notice of minute orders memorializing the juvenile court's decision to release the children into Mother's custody at the six-month review hearing in September 2021.  (§ 366.21, subd. (e).)  We grant the request.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  The Department separately moved to dismiss Mother's challenge to the March 2021 disposition order as moot and Mother did not oppose the motion.

## II.  DISCUSSION

Mother's challenge to the juvenile court's removal order is rendered moot by the September 2021 order returning the

children to her custody. Mother's challenge to the jurisdiction findings adverse to her is not justiciable in light of the uncontested findings against Father, and the only reasons she gives for why we should exercise our discretion to review the findings against her are the purported need to assess the propriety of the removal order that has been rendered moot and a speculative, non-specific assertion of potential future prejudice. We shall therefore dismiss the appeal, albeit with a short discussion of the merits just for Mother's benefit.

## A. *Jurisdiction*

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Indeed, "it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) Because the juvenile court's jurisdiction findings against Father are uncontested, we need not consider the sufficiency of the evidence to support the juvenile court's findings that are specifically adverse to Mother. (*Id.* at 1492 ["For jurisdictional purposes, it is irrelevant which parent created [the] circumstances" triggering jurisdiction]; accord *In re Briana*

6

*V.* (2015) 236 Cal.App.4th 297, 308 ["'[A] jurisdictional finding good against one parent is good against both'"].)

Although Mother's challenge to the juvenile court's jurisdiction findings is accordingly nonjusticiable, we nevertheless opt to briefly describe, for Mother's benefit, why at least one of the dependency allegations made against her was supported by substantial evidence. (See, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [affirming finding of jurisdiction over minor because the father did not challenge all bases for jurisdiction, but "not[ing]" the court's view on the challenged finding "[f]or [the] Father's benefit"].)

Section 300, subdivision (b)(1) authorizes a juvenile court to assume dependency jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . ." Here, among the various facts supporting jurisdiction under section 300, subdivision (b)(1), the Department alleged Mother failed to protect the children from Father's violent conduct, including pushing Mother and punching and kicking holes in the bathroom door. In disclosing these facts to the Department, Mother acknowledged M.G., a toddler, had placed herself between Mother and Father and hugged Father's leg during arguments on two or three separate occasions. It is well established that such recurring exposure to domestic violence supports dependency jurisdiction under section 300, subdivision (b)(1) regardless of whether the child has actually suffered physical harm. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134-135.)

7

Mother argues she protected the children from domestic violence because she regularly took the children to stay with relatives until conflicts between her and Father subsided. But substantial evidence demonstrates these conflicts never truly subsided: Mother and Father told the Department they argued "constant[ly]" and "daily," and Mother disclosed that she and the children left the home once or twice per month. In any case, Mother admitted that in multiple instances she and the children did not leave until verbal arguments escalated to physical violence.

Mother also contends circumstances had changed by the time of the adjudication hearing: she changed the locks, requested a restraining order, enrolled in a domestic violence class, and resolved not to resume her relationship with Father. Although these were positive initial steps, at the time of adjudication, changed locks and a restraining order were of questionable value in light of Mother's demonstrated reluctance to seek help from law enforcement in dealing with Father. Moreover, Mother's feelings of pity for Father compelled her to allow him to return to the family home on multiple occasions, including after he injured her during her pregnancy with J.G. in May 2020 and, more recently, after he was hospitalized for voicing an impulse to kill her.

### B.    *Disposition*
"At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if

8

returned home, and that there are no reasonable means to protect the child's physical health without removing the child." (*In re D.B.* (2018) 26 Cal.App.5th 320, 328.)  Mother contends removal was inappropriate in this case because reasonable alternatives existed, including preservation services and unannounced home visits by the Department to confirm Mother was keeping Father away from the children.

 According to the minute orders issued in connection with the juvenile court's September 2021 six-month review hearing, the juvenile court found Mother had made substantial progress on her case plan and returned the children to her custody. Because that is the sole relief sought in this appeal as to the challenge to the juvenile court's disposition order, there is no effective relief we can provide and the challenge is moot.  (See *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].)

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.